UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THETA IP, LLC, | ) |
|     Plaintiff, | ) ) ) ) No. 22 C 3441 |
| v. | ) ) Judge Sara L. Ellis |
| MOTOROLA MOBILITY LLC; LENOVO (UNITED STATES) INC, and LENOVO GROUP LTD,     Defendant. | ) ) ) ) ) |

**OPINION AND ORDER**

Plaintiff Theta IP, LLC ("Theta") filed this lawsuit against Motorola Mobility LLC ("Motorola"), Lenovo (United States) Inc. ("Lenovo US"), and their parent company, Lenovo Group Limited ("LGL"), alleging infringement of multiple of Theta's patents that detail technology used to preserve cell phone battery life. LGL filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] Because LGL does not have sufficient minimum contacts with Illinois, this Court lacks jurisdiction over LGL and dismisses it from this case.

---

[1] The parties filed their briefs and accompanying exhibits under seal, also providing redacted versions. If the Court refers to a sealed document, it attempts to do so without revealing any information that could reasonably be deemed confidential. Nonetheless, if the Court discusses confidential information, it has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

## BACKGROUND[2]

Theta manufactures high performance wireless networking equipment for mobile devices. Its founder, Professor Yannis Tsividis, invented systems to reduce the loss of cell phone's battery power that occurs when a cell phone connects to a wireless transmitter. He patented various aspects of his system in U.S. Patent No. 7,010,330 (the "'330 Patent"), U.S. Patent No. 10,129,825 (the "'825 Patent"), and U.S. Patent No. 10,524,202 (the "'202 Patent") (collectively, the "Patents").

Motorola and Lenovo US import, design, and sell various cellphones and tablet devices that connect to wireless receivers throughout the United States. Motorola is incorporated in Delaware and has its principal place of business in Chicago, Illinois. Lenovo US is incorporated in Delaware and has its principal place of business in Morrisville, North Carolina. Theta asserts that at least some of the products sold by Motorola and Lenovo US use cell phone battery designs that infringe on Theta's patents.[3]

LGL is a Chinese holding company, serving as the indirect parent company for Motorola and the direct parent company for Lenovo US. As explained by Adrian Chim, the Director of Group Financial Reporting and Accounting Policy for LGL, in his affidavit (the "Chim

---

[2] In addressing personal jurisdiction, the Court is not limited to the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Theta's favor. *Id.* at 782–83.

[3] These products include the following Motorola phones: the Moto G Family phones (including Moto G Power (2021), Moto G Stylus (2022), Moto G Stylus 5G, Moto G Stylus (2021), Moto G Stylus 5G (2022), Moto G Pure, Moto G 100, Moto G Play, Moto G Stylus (2020), Moto G Fast, Moto G Power (2022), Moto G Power (2020)); the Motorola Edge Family (including Edge, Edge (2021), Edge (2020), Edge Plus, Edge 5G, Edge Plus (2022)); the Motorola One Family (including One, One 5G, One 5G Ace, One Fusion Plus, One Action, One Hyper, One Zoom); the Moto X4; the Moto E Family; the Moto Z Family; and the RAZR Family (including, without Razr, Razr (2020), Razr (2nd Gen)). They also include the following Lenovo branded series smartphones: S Series; K Series; Legion Series; P Series; Z Series; VIBE Series; A Series; and the Tab Series products with cellular capabilities. The Court will refer to these products as the "Accused Products."

Affidavit"), LGL is incorporated and has its principal place of business in Hong Kong. *See* Doc. 54-1 ¶¶ 1–2. As a holding company, LGL does not manufacture or sell any merchandise, nor does it participate in the research and development of the Motorola or Lenovo US products. *Id.* ¶ 5. LGL does not participate in Motorola's or Lenovo US' decision making related to the sales, marketing, distribution, or importation of Motorola or Lenovo US products. *Id.* ¶ 6. Nor does LGL pay any wages or salaries to employees of Lenovo US or Motorola. *Id.* ¶ 8.

Both Motorola and Lenovo US have agreements with other LGL subsidiaries. In 2015, Motorola contracted with another LGL subsidiary and cell phone manufacturer, Motorola Wuhan, to sell cell phones throughout the United States. *See* Doc. 80-9 (the "Motorola and Motorola Wuhan Purchase Agreement"). Lenovo US entered into a distribution agreement with another LGL subsidiary, Lenovo PC HK Limited, to sell cell phones throughout the United States. *See* Doc. 80-10 (the "Lenovo US/Lenovo PC HK Agreement"). As part of the Lenovo US/Lenovo PC HK Agreement, Lenovo US agreed to consider, but would not be bound by, recommended prices provided by Lenovo PC HK. *See* Doc. 80-10 at 15. If Lenovo US chose to sell a product for less, it needs to consult "with the appropriate delegation levels within the Lenovo Group." *Id.* The Lenovo US/Lenovo PC HK Agreement defines Lenovo Group as "the group of companies owned, directly or indirectly, by Lenovo Group Limited." *Id.* at 5.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction."[4] *Curry v. Revolution Lab'ys, LLC*,

---

[4] Theta argues that the burden should shift to LGL to prove a lack of personal jurisdiction because LGL filed the motion in an untimely manner, after Theta filed a motion for default against LGL. *See be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011) ("Because he knew about the suit and chose to default rather than defend, he must bear the burden of proof on his post-judgment motion challenging personal

3

949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

## ANALYSIS

### I. Personal Jurisdiction

In patent cases, the Court applies the law of the Federal Circuit to determine whether personal jurisdiction exists. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008).[5] Under Federal Circuit law, personal jurisdiction is appropriate if authorized by Illinois' long-arm statute and consistent with due process. *Grober v. Mako Prod., Inc.*, 686

---

jurisdiction."). But the Court denied Theta's motion for default and ordered LGL to file its responsive pleading by May 24, 2023, which LGL did. Doc. 52; Doc. 54. Thus, *be2*'s burden-shifting instruction in the case of a post-default motion has no relevance to this case and the burden remains on Theta to prove jurisdiction exists over LGL.

[5] The law of the Federal and Seventh Circuits is in harmony on the question of whether the Court may exercise jurisdiction here, so the Court cites to them interchangeably. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, No. 16 C 6097, 2017 WL 3394741, at *3 (N.D. Ill. Aug. 8, 2017).

F.3d 1335, 1345 (Fed. Cir. 2012). Although theoretical differences may exist between the federal and Illinois constitutional standards, "no Illinois case has provided a definitive explanation" of these differences. *Matlin*, 921 F.3d at 705. Moreover, both constitutional standards focus on whether exercising jurisdiction over a defendant is fair and reasonable. *See KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010); *see also Wesly v. Nat'l Hemophilia Found.*, 2020 IL App (3d) 170569, ¶ 16 ("[I]t is generally true that, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." (alteration in original) (citation omitted)).

Jurisdiction is proper under the Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Personal jurisdiction comes in two forms: general and specific.[6] *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014). Theta does not assert that Illinois has general jurisdiction over LGL and instead only discusses specific jurisdiction. The Court limits its analysis accordingly.

---

[6] The Supreme Court has recently emphasized that a third method of establishing personal jurisdiction exists where a defendant has consented to suit in the forum. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023). Because Theta does not argue that LGL consented to suit in Illinois, the Court need not address the implications of *Mallory* further.

Specific jurisdiction arises "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself."). For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014). A defendant is not subject to jurisdiction solely because the plaintiff suffered injury in the forum state. *Id.* at 802. Instead, to establish specific jurisdiction over LGL, Theta must show that "(1) [LGL] purposefully directed activities at residents of the forum; (2) [Theta's] claim arises out of or relates to those activities; and (3) [the] assertion of personal jurisdiction is reasonable and fair." *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016).

Theta asserts two grounds for why this Court may exercise specific jurisdiction over LGL: first, that Motorola and Lenovo US, over whom this Court has jurisdiction, acted as LGL's agents; and second, that under a stream of commerce theory, LGL directs and controls its distribution channel to bring accused products into the United States to sell. The Court addresses each theory in turn.

A. Agency

Generally, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,

6

230 F.3d 934, 943 (7th Cir. 2000). In other words, a "parent's mere knowledge of its subsidiary's business in a particular jurisdiction does not render the parent amenable to suit there." *Neterval-Quiel v. CMC SRL*, No. 21-CV-1279-BHL, 2022 WL 4131921, at *6 (E.D. Wis. Sept. 12, 2022). But a court may have jurisdiction over a parent corporation where the contacts of its subsidiaries "may be imputed to [LGL] under either an agency or alter ego theory."[7] *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015); *see also Daimler AG*, 571 U.S. at 135 n.13 ("Agency relationships . . . may be relevant to the existence of specific jurisdiction."); *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) ("[T]he attribution of an agent's conduct to a principal to establish specific personal jurisdiction comports with federal due process.").

Agency may be based on actual or apparent authority. The parties do not explicitly argue that a certain type of agency governs, instead they dispute whether LGL has sufficient control over its subsidiaries to establish jurisdiction. *See Bilek,* 8 F.4th at 587 (noting that one factor Theta must show to establish jurisdiction under an agency theory is that "the principal controlled or had the right to control the alleged agent's conduct"); *Celgard*, 792 F.3d at 1379 (finding the court did not have personal jurisdiction over parent because the plaintiff failed to present evidence of the "requisite control for jurisdiction to be premised on the acts of agents."). Theta asserts three different categories of evidence to establish LGL's control: LGL's public statements from its corporate reports; the alleged overlap of some senior leadership between LGL, Motorola, and Lenovo US; and contractual agreements between LGL's subsidiaries that grant either privileges or responsibilities to LGL.

---

[7] LGL argues that personal jurisdiction does not exist under the alter ego theory as well. *See Bilek*, 8 F.4th at 590. Theta does not assert that the Court should find jurisdiction based on an alter ego theory, so the Court does not address it.

The language that Theta relies on from the corporate reports does not accurately reflect the conclusions Theta seeks to draw—that LGL controlled the day-to-day operations of Lenovo US' and Motorola's cell phone sales. LGL's corporate report includes a statement that the "Group . . . has the ability to affect those returns through its power to direct the activities of the entity." Doc. 82-2 at 197. However, as LGL notes, the report defines "Group" to include LGL and its subsidiaries. *Id.* at 64; *see also* Doc. 82-3 at 2. Because the "Group" thus includes more than just LGL or its leadership, the Court cannot draw the conclusion that it shows LGL's control over its subsidiaries. *See Kitt Holdings, Inc. v. Mobileye B.V.*, No. 1:17-CV-2421 RLM-MPB, 2018 WL 3389747, at *2 (S.D. Ind. July 11, 2018) (determining that language from corporate documents that clarified that "we" referred to "Mobileye [B].V. together with its subsidiaries" did not show the defendant's control over its subsidiaries). This is particularly true given the Chim affidavit, which asserts that LGL does not manufacture, sell, or distribute the Accused Products, much less participate in the daily activities of its subsidiaries. Accordingly, the Court finds LGL's corporate filings do not demonstrate that LGL controls its subsidiaries in a way that supports a finding of jurisdiction over LGL in Illinois.

Theta also identifies two officers, Laura Quatela and Sergio Buniac, whom LGL lists as part of its leadership team on its website but also identified in its interrogatory responses as only Lenovo US, and not LGL, employees. *See* Doc. 80-1 at 10; Doc. 82-1. Even if Quatela and Buniac are executives for both LGL and Lenovo US, the existence of two overlapping executives does not establish LGL's control over the sales of the Accused Products by its subsidiaries, particularly given the lack of other evidence of LGL's participation in the staffing, marketing, sales, and pricing decisions of its subsidiaries. *See Convergence Aviation, Ltd. v. United Techs. Corp.*, No. 10 C 2021, 2012 WL 698391, at *5 (N.D. Ill. Feb. 29, 2012) (finding that five

overlapping executives between the parent company and relevant subsidiary "insufficient to show substantial control" when the plaintiff could not explain how the executives have "at the direction of [the parent company]" directed the subsidiary.); *Bray v. Fresenius Med. Care Aktiengesellschaft Inc.*, No. 06 C 50197, 2007 WL 7366260, at *8 (N.D. Ill. Aug. 30, 2007) (finding no personal jurisdiction existed because the defendant was not involved in "staffing, marketing, sales or pricing decisions of Holdings," "Holdings is responsible for developing its own budget," "[t]he entities maintain separate books, records and bank accounts," "[n]othing presented by plaintiffs demonstrates that FMC KGaA is involved in the day-to-day business of Holdings," even where there was a similar composition of the entity managing the defendant and the board of directors of the subsidiary); *see also Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-CV-08285, 2013 WL 4495661, at *4 (N.D. Ill. Aug. 21, 2013) (finding that the parent company did not control its subsidiary where the parent and subsidiary "are independently operated, albeit through common ownership.").

      Finally, the contractual relationships between LGL and its subsidiaries do not support the conclusion that LGL controlled the manufacturing and sale of the Accused Products. Theta first emphasizes that LGL maintains the insurance policy for the Motorola and Motorola Wuhan Purchase Agreement. However, these accusations alone do not rise to the level of intermingling that would pull LGL into this Court's jurisdiction. Maintaining insurance with respect to a contract between two subsidiaries is not evidence of LGL's control over its subsidiary's sales and distribution decisions. Instead, it constitutes a standard administrative service that does not create sufficient minimum contacts to support the exercise of jurisdiction as "parent [companies] do not expect that performing these [standard administrative] activities may subject them to liability because of the actions of the subsidiaries." *Cent. States*, 230 F.3d at 945.

9

Theta also argues that LGL retains control over the price points of the Accused Products based on language in the Lenovo US/Lenovo PC HK Agreement. While price setting may rise to the level of involvement justifying subjecting someone to the jurisdiction of this Court, the language Theta relies on from the Lenovo US/Lenovo PC HK Agreement does not grant LGL the power to set pricing. *Convergence Aviation*, 2012 WL 698391, at *7 (declining to exercise personal jurisdiction over a parent company where "there is no evidence that [the parent company] controls its subsidiaries' staffing, marketing, sales, or pricing decisions"). As the Lenovo US/Lenovo PC HK Agreement states, "in case the price for a product is lower than the recommended price" Lenovo US "shall consult with the appropriate delegation levels within the Lenovo Group." *See* Doc. 80-10 at 15. Like with reference to other LGL corporate documents, Lenovo Group is defined as "the group of companies owned, directly or indirectly, by Lenovo Group Limited." *Id.* at 5. Otherwise, the distributor, here Lenovo US, "will establish the prices and any discounts for the products." *Id.* Even drawing all inferences in favor of Theta, Theta's misreading of the agreement does not lend itself to the conclusion that LGL has the power to set any product prices. Because Theta has not provided sufficient evidence that LGL controls Lenovo US or Motorola, Theta cannot rely on an agency theory to establish personal jurisdiction over LGL in Illinois.

### B. Stream of Commerce

Theta also argues that this Court has jurisdiction over LGL because it controlled all aspects of the supply chain for the Accused Products. The law surrounding the "stream of commerce" theory for specific personal jurisdiction remains split between two tests presented by Justice O'Connor and Justice Brennan in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). *See Polar Electro Oy*, 829 F.3d at 1349

(recognizing that the Supreme Court's most recent decision discussing the stream of commerce theory, *McIntyre v. Nicastro*, 564 U.S. 873 (2011), did not change the split identified in *Asahi*). For jurisdiction to exist under the stream of commerce theory, Justice O'Connor's test requires more than placing a product in the stream of commerce and instead evidence that the defendant had the "intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112. By contrast, Justice Brennan's test only requires evidence that a participant in the stream of commerce process be "aware that the final product is being marketed in the forum State." *Id.* at 117.

The Court does not need to address the *Asahi* split because Theta has not provided sufficient evidence under either test. *Celgard*, 792 F.3d at 1382 ("Similarly, in this case, we do not need to resolve the question as the results of the case are the same under either formulation of the stream-of-commerce test."). Theta relies on the close relationship that LGL's various subsidiaries have with each other, including the Motorola and Motorola Wuhan Asset Purchase Agreement and the Lenovo US/Lenovo PC HK Agreement, to suggest that LGL must control the supply chain. However, the fact that LGL's subsidiaries work with each other does not speak to their relationship with LGL or LGL's role in manufacturing, selling, or marketing the Accused Products, or any other products for that matter. *Cf. Chamberlain*, 2017 WL 3394741, at *5 (finding jurisdiction over a foreign company "who approved and allocated capital necessary to develop and bring to market the allegedly infringing product" and "had at least some say in the decision to continue exploiting a longstanding distribution channel that inexorably deposits a significant number of the products at issue in Illinois."). At best, Theta's evidence establishes that both Motorola and Lenovo US partner with foreign LGL subsidiaries. And, as discussed previously, LGL's payment for insurance policies and its ability to weigh in on some pricing in

11

limited circumstances do not create the control that Theta asserts it has. Accordingly, the stream of commerce theory does not allow this Court to exercise jurisdiction over LGL.

### II. Jurisdictional Discovery

Because the Court finds it lacks personal jurisdiction over LGL, it now addresses Theta's request for jurisdictional discovery. For a court to permit jurisdictional discovery, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction." *Cent. States*, 230 F.3d at 946 (citation omitted); *Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020) (the plaintiff "must make a colorable showing of personal jurisdiction before discovery is allowed"). This requires a plaintiff to "show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014) (citation omitted) (internal quotation marks omitted). Theta has not met its burden by making a prima facie or colorable showing of jurisdiction or demonstrating an ambiguous factual record. The Court thus denies Theta's request for jurisdictional discovery. *See Medline Indus.*, 2020 WL 5763637, at *4 ("[W]hen a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted." (citing *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, No. 16 C 5918, 2017 WL 1093150, at *12 (N.D. Ill. Mar. 23, 2017))).

### III. Transfer

The Seventh Circuit has recently explained that "when federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023); *see also* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of

jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed."). *But see Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1282–83 (Fed. Cir. 2015) ("With no argument for transfer from Astornet, however, we do not consider transfer as an alternative to dismissal and so do not definitively address § 1631's applicability."). This obligation is "quite limited," however, and requires consideration of whether transfer of the case is "in the interest of justice." *North*, 72 F.4th at 228. A bar on refiling based on the statute of limitations amounts to a compelling reason to transfer a case. *Id.* (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). But where the statute of limitations would not bar refiling, the Court need not transfer the case pursuant to § 1631. *Id.* ("If a plaintiff may, on its own, refile its case in a proper forum, the interests of justice do not demand transfer." (quoting *Danziger v. De Llano*, 948 F.3d 124, 133 (3d Cir. 2020)). Here, the statute of limitations does not appear to stand as a bar to refiling. *See* 35 U.S.C. §286. Therefore, the Court does not find that the interests of justice require transfer under § 1631 and so dismisses LGL as a defendant without prejudice for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court grants LGL's motion to dismiss [54]. The Court dismisses LGL from the case without prejudice for lack of personal jurisdiction.

Dated: March 25, 2024

SARA L. ELLIS
United States District Judge